IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

CHANDAR BINGHAM

                                    Petitioner,

           v.

UNITED STATES OF AMERICA

                                    Respondent.

Criminal Action Number 3:01CR270-
03-JRS
Civil Action Number 3:04CV859-JRS

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Petitioner Chandar Bingham's Motion pursuant

to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence.  After a thorough review of

Petitioner's arguments and the Government's response, the Court finds that the Motion is without

merit and will be dismissed.  The Court dispenses with an evidentiary hearing in this matter because

the files and record conclusively shows that Petitioner is not entitled to relief.  See Raines v. United

States, 423 F.2d 526, 529 (4th Cir. 1970).

In his application, petitioner claims that: (i) "he was denied due process when he was

deprived of a meaningful and effective direct appeal of his conviction" (Ground I); (ii) "he was

denied due process when sentencing was based and proceeded on misinformation of constitutional

magnitude, when sentence was imposed without jurisdictional requirements, and when the defendant

was not afforded a jury trial for forfeiture which was improperly joined with sentencing" (Ground

II); and, finally (iii) he received ineffective assistance of counsel based on various deficiencies

(Grounds III – XI).

Following each alleged ground, petitioner listed the facts which support his claim and included references to the trial transcript in most instances.  However, petitioner did not present argument until he submitted his seventy (70) page Reply to the United States' Response.  The United States claimed that petitioner's allegations were either procedurally barred, not properly presented in a § 2255 petition or that petitioner failed to demonstrate either deficient performance or prejudice under Strickland v. Washington.

## I. Background

On September 5, 2001, the United States named petitioner, along with Ramon Avila, Shawn Bailey, Donald Wilson, Catherine Wiberg, Zeferino Rosales, Jose Currichi-Abad, Jesue Guevara and Sergio Reynaga Valle, in a five-count Indictment arising out of an alleged conspiracy to possess and distribute cocaine hydrochloride.  The Indictment charged petitioner in Count One with conspiracy to manufacturer, possess and distribute 5 kilograms of a mixture and substance containing cocaine hydrochloride in violation of 21 U.S.C. § 846.  The Indictment also notified petitioner, pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, that if convicted, he would forfeit his interest in any and all property derived from the proceeds of his violations in Count One, including a home located in Mechanicsville, Virginia and approximately $2,500,000 in United States currency.

On November 14, 2001, five days before trial, the United States filed an information pursuant to 21 U.S.C. § 851(a), providing notice of the United States' intent to seek an enhanced sentence based on petitioner's prior felony drug conviction for possession with the intent to distribute cocaine base.  Petitioner's trial began on November 19, 2001 and lasted three days.  The jury heard from

eighteen witnesses, including five of the co-conspirators.[1]  Each co-conspirator testified to their involvement in the conspiracy and either their connection to petitioner or their knowledge of petitioner's level of participation in the conspiracy.  The law enforcement agents generally described the investigation and petitioner's ultimate arrest following a controlled telephone call from co-conspirator Avila to petitioner in which Avila, at the direction of law enforcement, arranged to meet petitioner to exchange an amount of cocaine.  Officers arrested petitioner as he arrived at the arranged meeting.

The jury deliberated for one hour and forty minutes before returning their verdict finding petitioner guilty as charged under Count One.  On February 19, 2002, the Court heard objections to the Pre-Sentence Report, made findings regarding the amount of cocaine attributed to petitioner and sentenced him to 262 months imprisonment followed by 5 years of supervised release.[2]  Petitioner timely appealed his conviction and sentence.  The Fourth Circuit found no error and affirmed both dispositions.  On January 12, 2004, the Court received petitioner's § 2255 Motion.  The Motion was filed on March 26, 2004.  After an extension of time for the government to file its response, the motion became ripe for consideration on June 17, 2004.  In light of fact that petitioner challenged the Court's factual findings during his sentencing hearing, the Court took petitioner's motion under advisement following the Supreme Court's decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531

---

[1]The Court will refer to these individuals as co-conspirators rather than co-defendants because all five pled guilty prior to petitioner's trial.

[2]With the enhanced sentence under § 851, petitioner faced a statutory mandatory minimum of 20 years in prison and a maximum of life.  Based on attributable drug weight, the Pre-Sentence Report placed petitioner at a Total Offense Level of 38 and a Criminal History Category of II, leading to a Sentencing Guideline Range of 262 to 327 months in prison.  The Court reduced the attributable drug weight, recalculated the guideline range based on Offense Level 36 and sentenced petitioner to the high end of the guideline range of 210 to 262 months.

(2004) and in anticipation of an appeal from the Seventh Circuit's decision in the matter of United States v. Booker, 375 F.3d 508 (7th Cir. 2004).  With the Supreme Court's answer in hand, the Court now turns its attention to petitioner's myriad claims and allegations.

## II. Ground I

Petitioner claims that he "was denied due process when he was deprived of a meaningful and effective direct appeal of his conviction."  Petitioner stated the following facts in support:

> A. Defendant received no briefing schedule from the clerk.
>
> B. Informal brief due date was pryor [sic] to receiving the trial transcript, as a result arguments were deemed waived.
>
> C. Motion for extension [sic] expansion, and supplement weren't regarded by the court of appeals.

Petitioner's § 2255 Application (citations to the trial record omitted).  In his reply brief, petitioner contends that he "was not able to precisely cite errors in the record to receive proper review from the Fourth Circuit [Court] of Appeals."  Petitioner claims that the Court of Appeals ordered his informal brief due on May 13, 2002 but that he did not receive the transcript until June 18, 2002.  Petitioner claims that he filed his informal brief by the due date and, at the same time, filed a motion for an extension of time to supplement his brief once he received the transcript.  Petitioner informed the Court of Appeals that had not received a copy of the trial transcript.

In sum, petitioner asserts that he was denied "access to the Court of Appeals on direct appeal in violation of his Fifth Amendment right to direct appeal because he was impeaded [sic] from receiving the transcript pryor [sic] to informal brief due date caused by the District Court Clerk[']s failure to comply with Federal rules of Appeallate [sic] Procedure."  Reply Brief at 16.  Petitioner insists that he should have received the transcript within a reasonable time to fully present his appeal

and that this failure somehow hindered his appeal because "[r]eceiving the record was also a crucial role in the due process of the appeal."  Reply Brief at 14.

With these allegations, petitioner asks the Court to excuse his own procedural mistakes committed before the Court of Appeals and address an issue in his 2255 Motion which the Fourth Circuit previously considered and rejected on direct appeal.  A well-worn tenant of § 2255 proceedings is that a petitioner may not "recast, under the guise of collateral attack, questions fully considered" by the Court of Appeals.  <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976).  There is simply no other standard by which this Court can judge this particular claim.  The Federal Rules of Appellate Procedure place upon the appellant the duty of complying with Rule 10(b) and doing "whatever else is necessary to enable the clerk to assemble and forward the record."  Fed. R. App. P. 11(a).

Pursuant to Rule 10(b) of the Federal Rules of Appellate Procedure, "[w]ithin 10 days after filing the notice of appeal . . . the appellant must . . . order from the reporter a transcript of such parts of the proceedings not already on file as the appellant considers necessary."  Fed. R. App. P. 10(b)(1)(A).  Following imposition of petitioner's judgment, retained trial counsel, Murray Janus, informed petitioner by letter of his right to appeal his conviction within 10 days but informed petitioner that he would need to retain new counsel or ask the Court of Appeals to appoint counsel if he lacked the necessary funds.[3]  Nothing in the record indicates that petitioner requested appointment of appellate counsel.

---

[3]Counsel also noted that he had not been paid for services rendered during the trial.  In an earlier letter, counsel informed petitioner that "[t]here is a substantial amount of money owed me on the balance of our fee, $50,000 to be exact."

The record does show that petitioner filed his notice of appeal on February 21, 2002 and that this Court granted petitioner's motion to proceed *in forma pauperis* on March 19, 2002.  Not until May 10, 2002 did this Court receive a motion by petitioner for copies of his trial transcript.  This Court granted the motion on May 15, 2002 and the completed transcripts were filed with the Court of Appeals on June 18, 2002.  With a full record before the Court of Appeals, as well as petitioner's twelve page informal brief and eighty page "appendix," the Court considered each of petitioner's various allegations of errors and deficiencies.  See United States v. Chandar Bingham, 50 Fed. Appx. 626 (4th Cir. 2002) (per curiam).

The Fourth Circuit found no reversible error and affirmed petitioner's conviction.  Id. at 627. Petitioner challenged the government's probable cause to arrest him and alleged the following: that the government failed to provide him with copies of the evidence against him prior to his probable cause hearing; that the magistrate judge was biased against him and that he conspired to alter the transcripts of the hearing to remove the evidence of his bias; that the magistrate judge refused to release him on bail before trial; that the magistrate judge's biased attitude caused petitioner's co-defendants to plead guilty and testify against petitioner; that counsel was ineffective; and that the district court erred in denying his motion to suppress evidence.  The Court found either no error or dismissed each contention for lack of merit.  Additionally, the Court rejected several other claims because petitioner "failed to present argument in support of these asserted issues" and so waived their consideration on appeal.  Id. at 628.  Finally, the Court denied petitioner's motion to supplement his informal brief.  Id.

Petitioner offers no excuse for his failure to timely secure the trial transcript as required by the Federal Rules of Appellate Procedure.  More importantly, petitioner does not demonstrate how

his appeal suffered as a result of his procedural defaults or why this Court should address an issue presented to the Court of Appeals and within their purview to remedy.  Petitioner's reliance on United States v. Brown, 202 F.3d 691 (4th Cir. 2009), is misplaced.  In Brown, the Court considered whether the lack of a transcript from a recusal hearing mandated a new trial.  Id. at 696.  However, petitioner does not contend that a transcript of his trial did not exist, instead, he needs an excuse for his failure to comply with Rule 10(b).  Brown simply does not stand for the proposition asserted by petitioner.[4]  Accordingly, petitioner's assertion under Ground I shall be dismissed because petitioner does not offer a valid excuse for his failure to comply with the Federal Rules of Appellate Procedure or inform the Court how it can hold that the Court of Appeals erred in its handling of petitioner's direct appeal.

The Court notes that a 2255 petitioner generally presents a narrow field of issues.  A petitioner may claim the right to be released "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255, ¶ 1.  Petitioner claims that he did not receive a meaningful appeal as protected by the Fifth Amendment because of errors by the district court clerk.  Assuming for the moment that petitioner's assertion somehow states a claim that this Court imposed petitioner's sentence in violation of the Constitution, any errors with regard to the Federal Rules of Appellate Procedure belonged to petitioner.  Nor has petitioner presented any

---

[4]Petitioner also cites the Court to Hardy v. United States, 375 U.S. 277 (1964).  However, Hardy does not help petitioner's argument because petitioner was not denied access to the trial transcript, as was the case in Harvey; petitioner simply failed to act in a timely manner to secure the transcript and the Court of Appeals saw fit not to allow petitioner additional time to supplement his informal brief.

evidence under Ground I to convince the Court that a miscarriage of justice occurred at sentencing. See United States v. Jones, 1995 U.S. App. LEXIS 13021, 2-3 (4th Cir. 1995) ("A sentence is otherwise subject to collateral attack where there is an error constituting a 'fundamental defect which inherently results in a complete miscarriage of justice.'") (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979).

## III. Ground II

Petitioner next asserts that he "was denied due process when sentencing was based and proceeded on misinformation of constitutional magnitude, when sentence was imposed without jurisdictional requirements, and when the defendant was not afforded a jury trial for forfeiture which was improperly joined with sentencing." In support of this contention, petitioner listed the following facts:

A. Lack of written factual finding necessary for appellate review.

B. Misrepresentation of trial transcript which made calculations erronous [sic] as to sentencing base offense level.

C. Failure to comply with rule 32.

E. [sic] Prerequisite to 851 enhancement was neglected by the prosecution and the court. [sic] Depriving district court of jurisdiction.

§ 2255 Application (citations omitted as before). The crux of petitioner's argument is that his sentencing process failed to conform "with fundamental principles of liberty and justice" which resulted in "a miscarraige [sic] of justice which was not consistent with principle elements [sic] demand of fair procedure." Reply Brief at 17. Specifically, petitioner contends that this Court failed

to comply with Rule 32(c)(3)(d) of the Federal Rules of Criminal Procedure during his sentencing hearing.[5]

Petitioner appears to use this argument to mask his real intent to challenge this Court's calculation of his sentence.  He claims that the failure to comply with Rule 32(c) prevented him from presenting certain sentencing errors on appeal because of the insufficient record.  Petitioner takes the opportunity on collateral review to point out that if the Court made factual findings, those conclusions would lack factual support in the trial record.  Petitioner covertly attempts to argue that his sentence violated the Supreme Court's holdings in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 124 S. Ct. 2531 (2004), as well as his Sixth Amendment right to a jury trial.

Petitioner's arguments are procedurally defaulted and without legal support.  Petitioner contends that the Court failed to make factual findings as required by Rule 32(c) and that the record did not support the Court's finding as to the amount of cocaine attributed to petitioner for purposes of calculating his sentence.  As to the miscalculation of his sentence, the jury found petitioner guilty

---

[5]It is not clear which version of the Federal Rules of Criminal Procedure petitioner cites in his submissions to the Court.  In the 2002 edition, applicable at the time of petitioner's sentence on February 19, 2002, Rule 32(c)(3)(D) (there in no subsection (c)(3)(d)), states that "[b]efore imposing sentence, the court must afford the attorney for the Government an opportunity equivalent to that of the defendant's counsel to speak to the court."  It is doubtful that petitioner meant to rely on this particular section.  The 2004 version of the Federal Rules, applicable when petitioner filed his motion, no longer contains a subsection (c)(3)(D).  The sentencing provisions are contained in Rule 32(i) and former subsection (c)(3)(D) is now subsection (i)(4)(A)(iii).  The only requirement to issue written findings under Rule 32(c) (2002 ed.) is found at the end of subsection (c)(1) which provides that "[a] written record of the court's findings and determinations with regard to controverted matters] must be appended to any copy of the presentence report made available to the Bureau of Prisons."  Fed. R. Crim. P. 32(c)(1).

of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846.  During the

sentencing phase, the Fourth Circuit instructs that

> [i]n determining the amount of drugs attributable to a defendant
> convicted of drug conspiracy, the district court may consider relevant
> information that is prohibited from being introduced at trial, including
> coconspirators' hearsay statements that it determines reliable, after
> giving the defendant an opportunity to rebut or explain the hearsay
> statements.  Further, the district court may attribute to the defendant
> the total amount of drugs involved in the conspiracy, provided the
> drug quantities were reasonably foreseeable to the defendant and are
> within the scope of the conspiratorial agreement.  The government
> must prove the drug quantities attributable to the defendant by a
> preponderance of the evidence.  Neither the Guidelines nor the courts
> have required precise calculations of drug quantity.  A district court's
> approximation of the amount of drugs is not clearly erroneous if
> supported by competent evidence in the record.  If the district court
> relies on information in the presentence report (PSR) in making
> findings, the defendant bears the burden of establishing that the
> information relied on by the district court in making its findings is
> incorrect; mere objections are insufficient.

United States v. Randall, 171 F.3d 195, 210-211 (4th Cir. 1999) (internal citations omitted).  The

Court held petitioner's sentencing hearing on June 18, 2002 and heard objections to the drug weight

attributed to petitioner in the pre-sentence report (PSR).

Petitioner argued that the evidence did not support a finding that the drug quantity attributed

to petitioner – in excess of 150 kilograms – was reasonably foreseeable.  Petitioner noted that the

amounts attributed to the other co-conspirators ranged between 50 and 150 kilograms with the

exception of Ramon Avila, the drug supplier.  The Court also heard from the United States which

reminded the Court that Shawn Bailey, a member of the conspiracy, pled guilty and admitted in his

Statement of Facts to an attributable drug weight of 100 but not more than 150 kilograms.  Ramon

Avila pled guilty and admitted to 200 kilograms.  The Court ultimately gave petitioner the benefit

of the doubt and estimated his attributable drug weight based on the low end of each co-conspirator's testimony. The Court held petitioner responsible for between 100 and 149 kilograms.

Based on this finding, the Court lowered petitioner's Adjusted Offense Level from 38 with a Criminal History Category II and a Guideline range of 262 to 327 months to an Adjusted Offense Level 36 and a Guideline range of 240 to 262 months. The Court then imposed a 262 month sentence. Petitioner's claims with regard to Rule 32 are without merit. Petitioner cannot demonstrate how any alleged failure to append a copy of the Court's findings to the PSR impacted his appeal. The Court's findings are present in the transcript of the sentencing hearing and were before the Court of Appeal's for review.

Additionally, petitioner fails to establish that the information relied on in the PSR was incorrect. More importantly, for purposes of his present motion, petitioner has not proved by a preponderance of the evidence that the Court imposed his sentence in violation of the United States Constitution. See 28 U.S.C. § 2255; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Petitioner does little more than assert that the facts presented at trial did not support the sentencing decision. However, such a challenge is not the type of constitutionally significant attack on a sentence envisioned by § 2255 and, in any event, petitioner's argument is not supported by the record before the Court.

The Court also notes that petitioner failed to raise his allegations in Ground II, as well as the specific factual errors, on direct review. Where a petitioner has procedurally defaulted a claim by failing to raise it during his initial appeal, the claim may be recognized on habeas review only if the petitioner demonstrates both cause and prejudice for his failure or that a miscarriage of justice has otherwise occurred. See United States v. Pregent, 190 F.3d 279, 284 n.5 (4th Cir. 1999). Petitioner

has not shown the requisite cause and prejudice to excuse his procedural default and so these allegations will be dismissed.

With regard to petitioner's challenge that this Court somehow lacked jurisdiction to impose his sentence due to alleged failures in complying with 21 U.S.C. § 851, the Court simply notes that, within the Fourth Circuit, the requirements of § 851 are not jurisdictional and are subject to the ordinary rules of waiver and forfeiture.  See United States v. Jones, 78 Fed. Appx. 844, 848 (4th Cir. 2003).[6]  Petitioner did not raise an objection to the § 851 notice and, as such, petitioner cannot demonstrate that the Court imposed his sentence without the requisite jurisdiction.  See 28 U.S.C. § 2255.  Nor can petitioner show that his sentence was in excess of the maximum authorized by law. The indictment charged petitioner with conspiracy to possess with the intent to distribute 5 kilograms or more of a substance described in 21 U.S.C. § 841(b)(1)(A)(ii).  Under that section, petitioner faced a maximum term of life in prison.  Petitioner's actual sentence of 262 months is not in excess of the maximum authorized by law.  Therefore, Ground II of petitioner's Motion will be dismissed.

Finally, with regard to petitioner's challenges to the forfeiture proceedings, the Court dismisses petitioner's claim for the reasons previously state by Judge Merhige when presented with a similar challenge:

> [S]ection 2255 ensures governmental accountability "to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."  Fay v. Noia, 372 U.S. 391, 402, 9 L. Ed. 2d 837, 83 S. Ct. 822 (1963).
> A facial reading of the statute, therefore, reveals that a federal

---

[6]Regardless, the government complied with the requirements of 21 U.S.C. § 851(a) to place petitioner on notice of the government's intent to seek an enhanced sentence based on petitioner's prior felony conviction.  On November 14, 2001, the government filed the required notice prior to trial and served a copy of the notice on petitioner's counsel.

12

> court may only consider a § 2255 petition that challenges custody
> under a federal criminal conviction or sentence.  Nowhere does the
> statute authorize collateral attacks on civil administrative forfeitures
> in an effort to secure the release of forfeited property or its cash
> equivalent.  Indeed, a forfeiture under § 881(a) is a civil action
> concerning a res, not a criminal action involving an individual's
> liberty.  See United States v. Turner, 933 F.2d 240, 245 (4th Cir. 1991).

Dawking v. United States, 883 F. Supp. 83, 85 (E. D. Va. 1995).  The forfeiture proceedings bore

no impact on petitioner's sentence and carry no weight with regard to petitioner's habeas claims.

## IV. Grounds III – XI

Grounds III through XI assert various claims of ineffective assistance of counsel.  Petitioner

must satisfy the two-prong test announced by the Supreme Court in Strickland v. Washington, 466

U.S. 668 (1984), in order to demonstrate that the assistance of his attorney was constitutionally

deficient.  Generally, petitioner must make plain his attorney's professional incompetence, i.e. that

his performance was inadequate, and that his deficient performance prejudiced petitioner's defense.

See Strickland, 466 U.S. at 687-88.  Under the performance prong, petitioner must demonstrate that

his attorney's representation was objectively unreasonable under prevailing professional norms.  Id.

at 688.  The reviewing court will strongly presume that counsel's performance falls within the wide

range of reasonable professional assistance under the circumstances as they existed at the time of the

alleged errors.  Id. at 689-90.

Under the second, prejudice prong, petitioner must demonstrate "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different."  Id. at 694.  A reasonable probability "is a probability sufficient to undermine confidence

in the outcome."  Id.  The petitioner "bears the burden of proving Strickland prejudice," and unless

the petitioner satisfies this burden, "a reviewing court need not consider the performance prong."

<u>Fields v. Attorney General of Maryland</u>, 956 F.2d 1290, 1297 (4th Cir. 1992).  The Court's focus will be primarily on the prejudice prong in each instance because petitioner failed to show that but for counsel's errors, a different trial result would have obtained.  Indeed, none of the alleged errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687.

 a. <u>Ground III</u>

 In Ground III, petitioner claims that he "received ineffective assistance due to counsel[']s failure to object to inadmissible, prejudicial evidence which violated Fed. rules of evidence 403, 404(b), 609."  In support of this claim, petitioner's list of supporting facts states as follows:

> A. Failure to notate [sic] on the record an objection to the irreprible [sic] harm that occurred for appellate review.

> B. Failure to object to the introductions [sic] of the defendant and the defendant's siblings records.

> C. Failure of counsel to request curative instructions.

> D. Failure at bench meeting to reinterate [sic] the prosecution[']s previous attempt to violate Fed. rules of evidence 403, 404(b), 609.

> E. Trial counsel's actions led to and caused damaging character evidence as well as damaging bad acts of burglary, and robbery.

§ 2255 Application.  In support of each of these alleged facts, petitioner cites various pages from the trial transcripts.  Petitioner's reply brief contends that defense counsel's ineffectiveness began during the examination of Sam Davis, a witness for the United States.  Petitioner asserts that counsel's failure to object to Mr. Davis' testimony prejudiced him throughout the remainder of his case.  Petitioner also claims that the United States flagrantly made an improper use of bad character evidence.  Petitioner argues that the absence of an objection is evidence that his attorney was

unfamiliar with the rules of evidence.  Petitioner also claims that counsel's failure to object to the government's introduction of his prior bad acts caused the jury to view him as having a propensity for criminal behavior.

Rule 403 provides, in pertinent part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Fed. R. Evid. 403 (2001).  Rule 404(b) states that "[e]vidence of other crimes, wrongs, or act is not admissible to prove the character of a person in order to show action in conformity therewith," however, such evidence may be admissible to show "proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b) (2001).  Finally, Rule 609 provides that evidence "that a witness other than an accused has been convicted of a [felony] shall be admitted" in order to attack the witness' credibility.  Fed. R. Evid. 609(a) (2001).

Petitioner complains that his attorney failed to object to violations of these rules of evidence. Petitioner first objects to counsel's performance in connection with the testimony of Samuel Davis. Mr. Davis, incarcerated for distribution of heroin and cocaine base, testified as a government's witness regarding statements made by petitioner while in prison following his arrest.   Trial Transcript p. 483-497.  Mr. Davis testified that petitioner stated that he supplied drugs to an individual involved in the separate prosecution of Mr. Davis.  Petitioner specifically claims that defense counsel should have objected to the following exchange:

> MR. ALTIMARI (AUSA):    Thank you.  Answer any questions Mr. Janus (defense counsel) might have for you.
>
> THE COURT:    Mr. Davis, just so I'm clear before Mr. Janus gets started, did you know [petitioner] before you met him in jail?

> THE WITNESS:       Yes, I met him before he went to college in the Richmond City Jail.  He had got locked up.
>
> THE COURT:         That's all I need. Go ahead.

Trial Transcript p. 492.  Petitioner believes that Mr. Davis' comment regarding petitioner's time in the Richmond City Jail prejudiced him in the eyes of the jury

Petitioner also complains about defense counsel's failure to object to the introduction of his and his brother's criminal record.  The objection surrounds the testimony of Tyrus Bingham, petitioner's father, who was called to testify as a defense witness.  It appears that petitioner misstates the record and is grasping at any possible objection made during trial in an effort to support his claim.  In this particular instance, during direct examination, the following exchange occurred between petitioner's father and *defense counsel* during a line of questioning with regard to petitioner's financial situation prior to his arrest:

> Q:    Sir, during the time [petitioner] was in school, specifically the 1999–2000 school year, did you ever see your son with any excess money, any wad of bills and cash or otherwise?
>
> A:    No.
>
> Q:    Did you ever see him spending any money that aroused suspicion?
>
> A:    No.  He was borrowing money.  He was having situations where he needed money.
>
> Q:    Did you ever have to lend him money from time to time?
>
> A:    Yes, sir.
>
> Q:    The times you visited him at Tobacco Row or the times you visited him at his home on Pelot, did you ever see any evidence of drug use, Mr. Bingham, or drug trading?

16

A:      No, I never tolerated anything like that.

MR. DAVIS (AUSA):       Can we approach, Your Honor?

THE COURT:      Come on up.

(At Bench)

MR. DAVIS:      The last set of questions opened the door to
the fact that Mr. Bingham has two sons
convicted with felony drug convictions.  His
son, Tyrus, has 34 different convictions.
[Petitioner] has one.  But for him to say that
he never tolerated anything like that is in the
nature of character testimony, and that opened
it up.

MR. JANUS:      I submit it is not the nature of character.  We
avoided that.

THE COURT:      He volunteered it.  Jesus.  He has opened the
cross-examination up.

Trial Transcript p. 638-39.  Following that exchange, the direct examination continued from defense

counsel.  On cross-examination, the United States made the following inquiries regarding Mr.

Bingham's visit to his son's house:

Q:      You never saw any cocaine, bags of cocaine in the bureaus in
that house?

A:      As I said earlier, if anything like that came to my attention, it
would not be tolerated.  I can't make that any stronger than
that.

Q:      Well, you had some heightened reason to be concerned, didn't
you, Mr. Bingham?

. . .

17

Q:      I'm not talking about coaching.  Listen to me.  Did you, with respect to your sons, have a heightened reason to be vigilant as of the fall of 1999? Yes or no.

A:      No.

Q:      No reason at all, Mr. Bingham?

A:      No.  Why would you think that I would have a heightened reason?

Q:      Mr. Bingham, did you know what your sons' records were at that time?

A:      Records?  What do you mean?

Q:      I mean their involvement with the law.

A:      My sons?

Q:      Yes.

A:      No.

Q:      You didn't know?

A:      No.

Q:      Is that true of your son, Chandar Bingham?

A:      No, I knew about Chandar, yes.

Q:      Is that true of your son, Tyrus Bingham?

A:      I didn't know anything about Tyrus.

Q:      All right [sic].  So you never went over just to find out what was going on on Fendall Avenue?

MR. JANUS:          Asked and answered.

THE COURT:          Sustained.

Trial Transcript p. 648-49.  Assuming for the moment that counsel's performance was negligent and

that counsel could have prevented Mr. Bingham from making the statement that he made, petitioner

has not, and cannot, demonstrate that but for counsel's errors in this instance, the outcome of the trial

would have been different.

Clearly, counsel intended to elicit from petitioner's father that he never observed his son with

excessive amounts of money or any other indication that petitioner was involved in any criminal

activity.  When petitioner's father voluntarily offered character evidence, counsel attempted to avoid

the consequences but was unsuccessful.  Regardless, petitioner suffers from the fact that a parade

of his co-conspirators testified to his involvement in the instant conspiracy and not the innocent slip

by his father as he testified.  This instance of character evidence, coming after the government's

presentation of its case, could not have been the single determining factor in the jury's decision to

convict and it is impractical to assign error to counsel for failure to anticipate the exuberance put

forward by petitioner's father to assist his son's defense.  To place such a burden on counsel would

require the Court to commit the mistake of judging counsel's performance with the benefit of

hindsight.  There is no evidence from which the Court can conclude that counsel's performance

during this direct examination prejudiced petitioner's defense or that without counsel's question and

response, petitioner would have been acquitted.  As to the other transcript pages cited in petitioner's

2255 application under Ground III, none support any possible basis upon which the Court could find

prejudice.  Indeed, one such citation shows that defense counsel prevented damaging testimony from

entering the record.[7]

---

[7]See Trial Transcript p. 79 where counsel successfully objected to witness testimony
regarding the source of $50,000 to $60,000 stolen from petitioner's apartment.

b. Ground IV

Petitioner claims that he "received ineffective assistance due to trial counsel's failure to object to both prosecution and its witness [sic] improper assertions of in admissible [sic] evidence that was in fact perjery [sic] and failure to object to the prosecution[']s improper vouching." Petitioner asserts that counsel failed to object to the prosecution's strategy of "guilt by association" and the prosecutor's own perjury when he asserted that "everyone in the indictment plead [sic] guilty." Petitioner claims that the ineffectiveness denied him the right to confront the witnesses against him. Petitioner also alleges that counsel failed "to object to improper vouching by the prosecutor for its witness, the rules of sequestration, and the invoking of potential perjury charged if witnesses were untruthful." Once again, petitioner cites various pages from the trial transcript in support of his claims.

Petitioner's central complaint surrounds the prosecutor's comments during closing argument regarding the guilty pleas by petitioner's co-conspirators. However, petitioner's representation of the government's statements during closing argument is not accurate. The government never told the jury to find petitioner guilty because all of the other members of the conspiracy pled guilty. AUSA Nicholas Altimari made the following comment at the end of his closing argument:

> [A]s painful at it may be to send somebody of this great promise to jail, justice requires that you do that; that he be convicted for what he has done and that he is punished just as all of the other people who were parts of this conspiracy are going to be punished under our system of justice.

Trial Transcript p. 716. Petitioner also cites multitude of transcript pages in support of his claims. On transcript page 135, Ashley Wiberg testified that she pled guilty as part of the drug conspiracy. She testified that five other members of the conspiracy pled guilty with the exception of petitioner.

Certainly this testimony is damaging to petitioner but, contrary to petitioner's assertions, the fact that defense counsel did not object to this testimony in no way indicates a lack of knowledge or unfamiliarity with the Rules of Evidence.  More importantly, petitioner cannot demonstrate that counsel's failure to object to her statements prejudiced his defense.

Shawn Bailey, a member of the conspiracy, testified that he sold drugs to Donald Wilson, also a member of the conspiracy, but that petitioner did not sell to Wilson.  Trial Transcript p. 378-79.  Bailey stated that there "was no need for [petitioner] to sell to Donald because he was a customer of mine."  Once again, petitioner cannot show that he was prejudiced by counsel's failure to object to this statement.  Petitioner's problem is that his defense could not overcome the fact that the various members of the conspiracy testified to petitioner's involvement.

The Court has thoroughly reviewed the remaining transcript pages cited by petitioner under Ground IV, none of which demonstrate that counsel's performance fell below an objective standard of reasonableness or that petitioner was somehow prejudiced by counsel's acts or omissions.  In fact, the pages cited do not relate to petitioner's allegations of "improper vouching by the prosecutor," violations of the "rules of sequestration" or "the invoking of potential perjury charges if witnesses were untruthful."   At the root of petitioner's argument is that he suffered prejudice because the United States attempted to prove his guilt by showing the jury that the other individuals charged in the indictment with petitioner pled guilty.  Petitioner's argument highlights the difference between the United States prosecuting a defendant under a theory that "guilty birds of a feather are flocked together" and the United States eliciting a co-conspirator's testimony as to his or her guilty plea in order to preempt the effectiveness of cross-examination as to the witness' credibility.  See United

States v. Griffin, 788 F.2d 707, 711 (11th Cir. 1985) (citing Krulewitch v. United States, 336 U.S.

440, 454 (1949) (Jackson, J., concurring)).

Before examining the case law in this area, a brief review of the procedural background is

in order.  The Indictment charged the following nine individuals, including petitioner, with

conspiracy to manufacture, possess and distribute 5 or more kilograms of cocaine hydrochloride:

Ramon Avila, Shawn Lamont Bailey, Chandar Bingham, Donald M. Wilson, Jr., Catherine Ashley

Wiberg, Zeferino Avalos Rosales, Jose Luis Currichi Abad, Jesue Guevara and Sergio Reynaga

Valle.  During the first day of trial, co-conspirators Catherine Wiberg and Ramon Avila testified.

In each instance, the government began the direct examination by inquiring into the fact of the

witness' guilty plea to the conspiracy charge.

During the second day of trial, co-conspirators Zeferino Avalos Rosales and Shawn Bailey

testified.  Zeferino Rosales testified that he was currently incarcerated for conspiracy to distribute

cocaine and that he conspired to distribute cocaine with Ramon Avila, Chandar Bingham, Shawn

Bailey, Catherine Wiberg and Jose Luis Currichi Abad.  Shawn Bailey testified that he was currently

in prison for conspiracy to sell cocaine and that he pled guilty to the charge.  Bailey also testified that

he was part of the conspiracy with petitioner and that they were both named in the indictment.[8]  Only

Ms. Wiberg testified that other members of the conspiracy actually pled guilty.  Trial Transcript p.

135.  She also stated that petitioner was the only member of the conspiracy to enter a plea of "not

_____

[8]Of the remaining co-conspirators named in the indictment, Donald Wilson, Jr., and Jose Juis
Currichi Abad pled guilty and were included on the government's witness list, but did not testify.
Jesue Guevara and Sergio Reynaga Valle pled "not guilty" before this Court on November 19, 2001,
the first day of petitioner's trial.  Mr. Valle eventually pled guilty.  Jesue Guevara proceeded to trial
before Judge Henry Hudson almost one year after petitioner's trial.

guilty" and proceed to trial. Without exception, each testifying member of the conspiracy described petitioner's involvement in connection with their own participation.

Petitioner claims that his attorney allowed the government to pursue a strategy of proving his guilt by association. However, the United States never crossed the line between describing the conspiracy (permissible) and asking the jury to find petitioner guilty because the other co-conspirators pled guilty (impermissible). Ms. Wiberg is the only witness who testified that one of the non-testifying co-conspirators, David Wilson, pled guilty. In United States v. Blevins, 960 F.2d 1252 (4th Cir. 1992), the Court of Appeals reviewed the convictions of three defendants charged with participating in a drug distribution conspiracy. The Court found "that the introduction into evidence of testimony that six non-testifying co-defendants had pleaded guilty constituted error." Id. at 1254. However, the Court subjected the error to harmless error analysis and found that the error to be harmless beyond a reasonable doubt and affirmed the convictions. Importantly, the Court noted that in a complex drug conspiracy case, while not given a perfect trial, the defendants "were given the fair trial to which they were entitled under the Constitution." Id.

In Blevins, the Fourth Circuit recognized that "evidence of a non-testifying co-defendant's guilty plea should not be put before the jury." Id. at 1260. The Court offered two reasons for this prohibition: (1) defendant's inability to probe the motivations for entry of the plea which undercuts "the defendant's right to have a jury's verdict based only upon evidence that is presented in open court" and (2) the concern that the jury may convict the defendant based on the disposition of the charges against his co-defendants and not on his personal culpability. Id.

With regard to the guilty pleas of the two *testifying* co-defendants, the Court was "less inclined to find any error in the discussion of their pleas given that the appellants had the opportunity

23

to cross-examine them." Id. at n.3.  Moreover, the Court accepted that "the government was justified in eliciting testimony as to their pleas in anticipation of impeachment of the witnesses on that basis." Id.  The trial court also gave a limiting instruction to the jury that they were not to consider the guilty pleas of the co-defendants as evidence of the remaining defendants' guilt.

As to the mention of the guilty pleas of the non-testifying co-defendants,[9] the Fourth Circuit considered whether the error mandated reversal of the convictions.  The Court began by reminding us that "[t]he ultimate aim of the [judicial] system ... is not unattainable perfection, but rather fair and correct judgments." Id. at 1261.  In a conspiracy case, the courts must be vigilant to safeguard the individuality of each defendant in his relation to the mass but at the same time remember "that when many conspire, they invite mass trial by their conduct." Id. at 1262.  Finding the introduction of the guilty pleas of the non-testifying co-defendant to be a trial error rather than a structural error under the Supreme Court's harmless error analysis, the Court rejected any argument that the discussion of the guilty pleas at discrete points during the presentation of evidence "infected the entire trial process." Id.

The Court asked "whether it is clear beyond a reasonable doubt that the jury would have returned verdicts of guilty against appellants even if the evidence concerning the co-defendants' guilty pleas had not been introduced." Id. at 1263.  The Court then evaluated the impact of the error against the other evidence presented at trial. Id.  The Court ultimately concluded that the error was harmless based on "the overwhelming nature of the evidence against the three appellants." Id.  As was the case in Blevins, the government in the instant case presented overwhelming evidence of

---

[9]In petitioner's case, Ms. Wiberg testified the David Wilson pled guilty, but Mr. Wilson did not testify at trial and so his guilty plea was not subject to cross-examination.

petitioner's involvement in the drug conspiracy.  Therefore, even if the Court concludes that defense counsel unreasonably failed to object to an alleged attempt to introduce these guilty pleas as evidence of petitioner's guilt, petitioner cannot demonstrate prejudice.  Indeed, any error that may have occurred, even as to Ms. Wiberg's mention of the non-testifying co-defendant's guilty plea, was harmless and did not prejudice the outcome of petitioner's trial.

In Ground IV, as with all of petitioner's other grounds of error, the Court is faced with a general allegation followed by general "supporting facts" that are often little more than allegations coupled with citations to the trial transcript.  In reviewing Ground IV, the Court attempted to discern petitioner's argument and weigh it as best at it could.  The Court also acknowledges that petitioner begins his allegations by reciting that counsel was ineffective and then he proceeds to make his argument which has little to do with counsel's performance and more to do with petitioner attempting to inject error into his trial process.  Claims of ineffective assistance of counsel are serious allegations and should not be used as a vehicle to present arguments that petitioner failed to make on direct appeal.  Finally, to the extent petitioner has made allegations of perjury or improper vouching for the veracity of a witness by the United States, those allegations are without merit and will be dismissed.[10]

---

[10]Petitioner failed to identify any specific perjurious statement by any of the witnesses. Petitioner's allegations simply attack the credibility of the witnesses.  As an example, petitioner's reply brief states that "[i]t only came down to what convicted felons could say, one of the most intricate testimonies being improper and perjurous [sic]. Ashley Wiberg uttered anything to receive her reward as a crucial co-defendant against the petitioner that testified extensively."  Reply Brief p. 41.  The statement by petitioner amounts to a challenge to the sufficiency of the evidence and issues of witness credibility.  Matters concerning a witness' credibility are within the province of the jury and will not be considered on collateral attack.  See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).  Moreover, petitioner has not demonstrated cause or prejudice to excuse his procedural default for failing to raise the issue of witness perjury on direct appeal.  See United States v. Frady, 456 U.S. 152, 164-65 (1982).

c. Ground V

Petitioner alleges that he "received ineffective assistance due to counsel's failure to investigate, surpress [sic], and object to inadmissible use of pen register evidence." Petitioner claims that counsel failed "to have the pen register evidence stricken from the record as well as the testimony in relation to pen register for failure to comply with Title III protection against unauthorized interception[,] disclosure or use." Petitioner also charges his attorney with failure to properly cross-examine Agent Alessi and "elicit the improper procedures in relation to the pen registers." Petitioner's argument continues his general theme that defense counsel did not adequately prepare for trial and did not subject the prosecution's case to sufficient scrutiny.

He claims that defense counsel should have challenged the pen register evidence because the government did not follow proper procedures in obtaining authorization to monitor his telephone calls. Petitioner asserts that the Government used this improper evidence as its critical link to connect him to the conspiracy and verify statements made by the co-conspirators during their testimony. Petitioner makes an unsupported allegation that the government's application for a pen register under 18 U.S.C. § 3122 was not approved and that counsel failed to object to the presentation of this evidence at trial.[11]

---

[11]During the detention and preliminary hearing before Magistrate Judge Lowe, DEA Agent Robert Scanlin described the nature of the investigation into this conspiracy. Much of the testimony concerned the wire taps of Mr. Avila's cellular telephone as well as controlled conversations between Mr. Avila and members of the conspiracy, including petitioner, following Mr. Avila's detention. The investigation began with a wire tap on Donald Wilson. This led to separate wire taps on Shawn Bailey and Mr. Avila's cellular telephones. According to the testimony of Agent Scanlin, the DEA did not secure a wire tap for petitioner's cellular telephone. Agent Scanlin did not discuss the pen registers during this hearing.

Even if the Court assumes that the agents involved in investigating this case illegally monitored the telephone calls of the co-conspirators, the Court must consider whether counsel was incompetent simply because he did not make an issue out of what appears, in retrospect, to have been a potential, although vague, issue.  "Judicial scrutiny of counsel's performance must be highly deferential."  Furthermore, the Supreme Court advises that in reviewing trial performance

> [i]t is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689 (internal quotations and citations omitted).  Indeed, the burden remains on the petitioner to prove counsel's ineffectiveness.

The testimony regarding the pen registers showed that multiple telephone calls were made between Shawn Bailey and petitioner and between Ramon Avila and petitioner.  Agents used the pen register to track the number of telephone calls made.  This evidence did not reveal information about the substance of the calls.  Even assuming that counsel erred by failing to challenge the pen register evidence, petitioner is unable to show that he was prejudiced by the admittance of this evidence and testimony.  At best, the pen register evidence demonstrated that petitioner was in contact with Bailey and Avila, a point which petitioner never contested at trial.  Indeed, both Mr. Bailey and Mr. Avila

27

testified to their involvement with petitioner. The pen register evidence merely served as background to the government's larger investigation of this conspiracy and its uncontested admission did not prejudice petitioner's defense.

### d. Ground VI

In Ground VI, petitioner claims that he received ineffective assistance "due to trial counsel's failure to invoke the sequestration of witnesses rule and allowing continuous violations of fed rules of evidence." Specifically, petitioner cited Rule 615 which allows for the exclusion of witnesses at the request of a party in order to prevent the witnesses from hearing the testimony of other witnesses. Fed. R. Evid. 615. Petitioner insists that had counsel requested "stricter sequestration, or bar cohabitation of witnesses," there is a "reasonable probability the jury's verdict would have been contrary." Reply Brief p. 58.

In support of his claim of witness collaboration, petitioner submitted affidavits from Leon Phillips and Rod Willis; both individuals were unrelated to petitioner's prosecution and had no apparent connection to the drug conspiracy. The crux of their affidavits is that both were present in the holding cell of the United States Marshals Service in the U.S. District Courthouse in Richmond, Virginia during petitioner's trial and that they observed the witnesses present for petitioner's trial collaborating with regard to their testimony.

During the trial, defense counsel repeatedly cross-examined the co-conspirators about possible collusion. For example, defense counsel engaged government witness Michael Jones in the following exchange:

> Q: This morning you have been back in the same cell talking to other people who are going to be witnesses, haven't you, sir?

> A:   Yes.
>
> Q:   You have been talking to them about what you were going to say and they have been telling you what they were going to say, right?
>
> A:   No.
>
> Q:   You haven't been talking to them?
>
> A:   I talked to them.  We didn't talk about what we were going to say.

Trial Transcript p. 100.  On direct examination of government witness Herbert Lee, the government raised the issue first:

> Q:   Have you seen Pancho [Ramon Avila] in this building somewhere today?
>
> A:   Yes, sir.
>
> Q:   Where did you see him?
>
> A:   Back there in the bullpen.
>
> Q:   Did you speak to him.
>
> A:   Yes, I talked to him.
>
> Q:   Did you talk about what you were going to testify about?
>
> A:   No, just said, "Hey, how are you doing?"  He said, "I'm doing all right."  And that was it.

Trial Transcript p. 348.  In cross-examining Shawn Bailey, defense counsel began by asking the following questions:

> Q:   Mr. Bailey, you have been in the back in the lock-up?
>
> A:   Yes.

> Q:      And you have been sharing that lock-up, those cells with other inmates, correct?
>
> A:      Yes.
>
> Q:      They have all been talking to each other; isn't that correct?
>
> A:      Yes.

Trial Transcript p. 414.  As to government witness Samuel Davis, III, defense counsel made the following inquiry:

> Q:      You have been in the back in a cell waiting to testify today, haven't you?
>
> A:      Yes.
>
> Q:      Other people in this case who have been witnesses have been back there, too?
>
> A:      Yes.
>
> Q:      And you all have been talking among each other, haven't you?
>
> A:      No.
>
> Q:      You haven't talked at all to anybody since you have been back there?
>
> A:      No.
>
> Q:      Everyone else is talking, aren't they?
>
> A:      No, really nobody is talking.

Trial Transcript p. 495.  Petitioner fails to carry his burden of proving counsel's ineffectiveness by a preponderance of the evidence.  Even assuming that counsel's performance was deficient for not requesting more elaborate sequestering of the witnesses, petitioner cannot show that but for the

deficiency, the outcome of the trial would have been different.[12]  Even on a cold record, it is clear that defense counsel pursued a trial strategy of attempting to cast doubt on the credibility of the government's witnesses.  To that end, counsel raised the possibility, through his cross-examinations, that the government's witnesses were collaborating with regard to their testimony against petitioner. Certainly, the Court cannot say that defense counsel failed "to make the adversarial testing process work in the particular case." Strickland, 466 U.S. at 690.

Perhaps counsel could have requested that the Marshals keep the witnesses separate and prevent them from talking throughout the trial, but counsel may have decided that the best way to use the situation was to have the jury repeatedly hear the questions regarding possible collusion.  As petitioner points out, the credibility determinations played a crucial role in this trial.  Petitioner faced a parade of his former co-conspirators as they testified to his involvement in the conspiracy.  Defense counsel may have concluded that the best defense, and maybe the only defense, was to cast doubt on their credibility.  As mentioned above, petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689.  The Court finds, based on a thorough review of the record, that petitioner did not suffer prejudice due to any alleged failure by counsel to request "stricter sequestration."  Additionally, the Court will not find error in counsel's decision to examine witnesses for possible collusion rather than seeking additional sequestration beyond excluding the witnesses from the courtroom.  These issues of trial strategy are best left to the discretion of competent trial counsel.

e. Ground VII and XI

---

[12]Prior to opening statements, the government moved to exclude the witnesses from the courtroom which the Court granted.

These two grounds are grouped together because they make general allegations of error.  In Ground VII, petitioner claims that he "received ineffective assistance due to counsel[']s failure to correct false or misleading arguments."  Petitioner contends that "multiple misrepresentations by the prosecution during closing arguments went unobjected to despite there [sic] highly prejudical nature."  In support, petitioner cites the "entire closing arguments."  First, petitioner fails to specifically identify the "multiple misrepresentations" by the prosecutor to which counsel failed to object.  While the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the petitioner's advocate, sua sponte developing statutory and constitutional claims the petitioner failed to clearly raise on the face of his motion.  See Cochran v. Morris, 73 F.3d 1310, 1314 (4th Cir. 1996) (en banc).

Second, even if the Court scours the government's closing argument for constitutionally improper comments, the Court must consider whether defense counsel's only reasonable choice was to raise an objection to the prosecutor's comments.  See Bussard v. Lockhart, 32 F.3d 322, 324 (8th Cir., 1994) ("Counsel's decision to object during the prosecutor's summation must take into account the possibility that the court will overrule it and that the objection will either antagonize the jury or underscore the prosecutor's words in their minds. Thus, the question we have to ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection.").  Such decisions as to whether to object are treated as strategic trial decisions and reviewed deferentially.

With regard to closing arguments, the Fourth Circuit looks to see whether the prosecutor's comments so infected the trial with unfairness that the conviction was a denial of due process. Adams v. Aiken, 965 F.2d 1306, 1318 (4th Cir. 1992).  After a thorough review of the closing

32

arguments, the Court is unable to identify comments that were so improper that counsel's failure to raise an objection amounted to deficient performance.  Petitioner fails to recognize that closing arguments are adversarial in nature and while the Fourth Circuit has cautioned against certain statements by prosecutors, nothing in these closing remarks approach what the Fourth Circuit describes as the outer limits of proper argument.  See e.g. United States v. Moore, 710 F.2d 157, 159 (4th Cir. 1983) (commenting on prosecutor's statement that a defense witness insulted the jury by telling the most incredible lies); Untied States v. Rogers, 853 F.2d 249, 251 and 253 (4th Cir. 1988) (remarking that prosecutor's reference to defendant as a liar, thief and crook, while excessive and uncalled for, was harmless overkill and not plain error).  Defense counsel chose not to object to the government's closing argument; a decision which this Court cannot fault or determine to be prejudicial to petitioner's defense.

In Ground XI, petitioner alleges ineffective assistance "due to the cumulative errors made by counsel during the trial pryor [sic] and post trial" and that "collectively the mistakes and neglect amounted to legal incompetence."  This allegation carries no more weight with the Court than if petitioner had simply asserted that counsel must have been ineffective because the jury found him guilty.  Such a general complaint is not sufficient to support petitioner's challenge to his sentence and will be dismissed without further discussion.

f. Ground VIII

Petitioner insists that he received ineffective assistance of counsel "due to counsel's failure to subject the prosecution[']s case to a meaningful adverse testing process."  Specifically, petitioner alleges that counsel (1) "failed to attack elements of [the] crime;" (2) that counsel did not "request adequate jury instruction removing the ambiguity of non co-defendant testimony and its relevance

to the conspiracy charge;"[13] (3) that counsel failed "to motion the court on the prosecution[']s failure to meet this burden" and (4) that counsel failed to "interate [sic] to the jury, the prosecution's neglect of its burden to prove the elements." Once again, petitioner's arguments express his dissatisfaction with the fact that the jury actually found him guilty and do not cast doubt on the fairness of the trial proceedings or the performance of his attorney.

To prove the existence of a conspiracy to distribute cocaine, the government must prove, beyond a reasonable doubt, that: (1) "an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996). By its very nature, a conspiracy is "clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement." Id.; see also Blumenthal v. United States, 332 U.S. 539, 557 (1947). In most instances, a written agreement formalizing the conspiracy will not exist and the conspiracy may be proved wholly by circumstantial evidence consisting of a defendant's "relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy." Burgos, 94 F.3d at 858 (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984)).

Petitioner's attorney attempted to attack the government's conspiracy case at every turn. First, counsel examined the members of the conspiracy regarding their own participation and their

---

[13]The Court is unable to make any sense of this contention. The Court gave extensive instructions to the jury regarding the credibility or truthfulness of the witnesses. Trial Transcript p. 764-67. Petitioner has not asserted any specific objection or cited a specific jury instruction that counsel failed to submit. Although mindful of the Fourth Circuit's mandate to liberally construe pro se complaints, see Gordon, 574 F.2d at 1151, the Court will not search the record in order to divine the meaning of a vague assertion.

own agreements with the government in an effort to cast doubt on their credibility.   Counsel attempted to portray petitioner as a student and college basketball player without time to participate in an extensive drug conspiracy given his course load and basketball schedule.  Counsel stressed the fact that this supposed drug dealer was arrested with seven dollars in his pocket and that he relied on his father for money.   Defense counsel put on evidence that petitioner made extra money by repairing used cars and selling them through local dealerships or to individuals directly and, unfortunately, some of those customers happened to be members of this drug conspiracy.  There is simply no evidence that counsel failed to force the government to prove every element of its case. Petitioner's problem is that the government's evidence overwhelmingly proved each element of the conspiracy charge beyond a reasonable doubt.  The government established petitioner's relationship with Ramon Avila, the source of the conspiracy's cocaine, and Catherine Wiberg, petitioner's drug courier, both admitted members of the conspiracy.   The evidence also demonstrated petitioner's knowledge of the conspiracy as well as his active participation, including conducting the business of the conspiracy from his homes.

Finally, with regard to counsel's failure to move for judgment of acquittal at the close of the government's evidence, see Trial Transcript p. 529, the Court finds that this omission did not prejudice petitioner given the amount of evidence marshaled against him.   Upon a motion for a judgment of acquittal, "the test is whether there is substantial evidence which, when viewed in the light most favorable to the government, tends to show that the defendant is guilty beyond a reasonable doubt; and the rule is the same whether the evidence is direct or circumstantial."  United Steelworkers of America v. NLRB, 538 F.2d 326 (4th Cir. 1976).  In this case, the government mounted a substantial case against petitioner beginning with the co-conspirators and continuing

through the testifying agents to the point where it is unlikely that such a motion by counsel would have been granted.  Petitioner is unable to demonstrate that had counsel moved the Court for a judgment of acquittal that the evidence was so insubstantial that petitioner could not have been found guilty beyond a reasonable doubt.

g. Ground IX

Petitioner alleges that he received ineffective assistance of counsel due to counsel's "failure to present competent evidence in support of defendant[']s objection to the amount of drugs attributed to the defendant for sentencing purposes and failing to compel compliance with due process rights with respect to the entire sentencing process."  Petitioner alleges four specific failures by counsel. The Court previously addressed three of the four under Ground II above and will not revisit those arguments here.[14]  As to the fourth allegation, petitioner claims that counsel failed to "anticipate drug quantity dispute with special jury verdict form specifying amount."

As previously discussed under Ground II, the Pre-Sentence Report held petitioner accountable for 150 kilograms of cocaine.  The Court, hearing petitioner's challenge to the drug weight at sentencing, reduced the attributable amount to between 100 and 149 kilograms which lowered his guideline range.  Petitioner fails to demonstrate how counsel's failure to seek a special jury verdict on the issue of drug amount prejudiced the outcome of his sentencing proceedings. Based on a review of the record, it is likely that the jury would have found petitioner accountable for more than 149 kilograms of cocaine.  See United States v. Williams, 986 F.2d 86, 90 (4th Cir. 1993)

_____

[14]The three repeated claims are: (1) "failure to object to misrepresentation by the court of the trial record in a supposed factual finding;" (2) failure to object to the 851 enhancement that the court and prosecution failed to satisfy the legal prerequisite before such an enhancement can be implemented;" and (3) "failure to object and dispute the improper forfeiture proceedings that was erronously [sic] joined with sentencing."

36

(instructing that a defendant convicted of conspiracy "should be sentenced not only on the basis of his conduct, but also on the basis of conduct of coconspirators in furtherance of the conspiracy that was known to the defendant or reasonably foreseeable to him").  In addition, there was evidence in the record that members of the conspiracy converted the cocaine they received from petitioner into cocaine base, including testimony that petitioner himself "cooked" cocaine into cocaine base. Petitioner has not shown that he was prejudiced by counsel's failure to seek a special verdict because he cannot show by a preponderance of the evidence that the jury would have held him accountable for less than 100 kilograms of cocaine.  Indeed, such a claim is contrary to the total weight of evidence in this case.

h. Ground X

In Ground X, petitioner complains of counsel's "failure to object to unadmissible [sic], prejudicial evidence which violated Fed. rules of evidence 701, 702, 704 in the form of improper lay opinion."  Petitioner cites counsel's failure: (1) "to object and compel prosecution to lay evidentiary foundation of opinions;" (2) "to object to prosecutor[']s misrepresentation of lay opinion in closing statements to the jury;" (3) "to completely read [petitioner's] exhibit #3 to the jury as it conflicts with lay opinion of prosecution witness and also failure to fully confront prosecution witness with the evidence;" and (4) "to request curative instructions."  Once again, petitioner directs the Court's attention to sections of the trial transcript in support of his "supporting facts."

Federal Rule of Evidence 701 provides that

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific,

37

> technical, or other specialized knowledge within the scope of Rule
> 702.

Fed. R. Evid. 701 (2001).  Rule 702 covers the testimony of expert witnesses where scientific, technical or other specialized knowledge will assist the trier of fact.  Rule 704 permits opinion testimony as to an ultimate issue to be decided by the trier of fact; however, the rule prohibits an expert from offering an opinion whether the defendant "did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(a) and (b).

The transcript sections cited by petitioner concern the testimony of co-conspirators regarding taped telephone conversations involving petitioner.  Without any other substantive argument from petitioner, the Court can only assume that petitioner believes that his attorney should have objected when the witnesses offered their opinion as to what was being discussed during the conversations. As each subsequent reference in the transcript raises the same substantive objection, the Court will focus on the first occurrence in the trial transcript.

During Ramon Avila's testimony, the government played tape-recorded conversations for the jury and asked Mr. Avila to explain the meaning behind the conversations.  One exchange went as follows:

> Q:   What's that call about?
>
> A:   I call him about he got the money ready for the things that I
>      left him.  And he tells me that he already got the money for
>      two but he needed to get the money for the other one.
>
> Q:   When you say the things that you left him, what are you
>      referring to?
>
> A:   Cocaine.

Q:      When you say two?

A:      Two kilos.

Q:      And the one is an additional kilo?

A:      Yes.

Trial Transcript p. 287.  Petitioner seems to think that an objection to this "opinion" testimony was warranted and that counsel's failure to object is evidence of his ineffective assistance of counsel. However, such testimony is squarely within the requirements of Rule 701.  Counsel's failure to object, rather than demonstrating an unfamiliarity with the Rules of Evidence, indicates his understanding of the rule and its function.

The Fourth Circuit recognizes that "the key inquiry under Rule 701 of the Federal Rules of Evidence is whether lay opinion testimony would be helpful to the jury." United States v. Sanchez, 1995 U.S. App. LEXIS 379, *15 (4th Cir. 1995) (citing United States v. Fowler, 932 F.2d 306, 312 (4th Cir. 1991).  In Sanchez, the case centered on a credibility dispute between Chapman, a co-defendant in the cocaine conspiracy, and the defendant Sanchez over the meaning of certain words during a tape-recorded conversation.  The Court found that "Sanchez's argument that Chapman should not have been allowed to testify regarding the meaning of a conversation available to the jury lacks any merit." Id. at *15.  The Court held that Chapman's interpretation was helpful to the jury because the conversation allegedly involved code words for the drug deal.  The Court also noted that Sanchez's counsel attempted to discredit Chapman on cross-examination but that the jury found Chapman's version more credible.

The same is true of the instant case.  Mr. Avila offered his interpretation of the conversation to aid the jury.  Additionally, petitioner's reliance on Rules 702 and 704 is misplaced.  The witnesses

39

did not offer expert testimony nor is the testimony in this regard as to an ultimate issue in the case. The witnesses did not tell the jury which result it should reach, rather, they confirmed petitioner's participation in the conspiracy and knowledge of its activities.   Furthermore, the government's closing argument, based in part on the tape-recorded conversations, was neither improper nor objectionable.  Petitioner cannot demonstrate deficient performance by counsel in failing to object to the opinion testimony because there is no basis for the objection.  As with the previous eight ineffective assistance of counsel allegations, this one must be dismissed.

## V. Remaining Motions

In addition to his § 2255 application, petitioner filed a Motion for Leave of Court for Discovery under Rule 6 of the Rules governing Section 2255 Proceedings.  Petitioner claims that the government agent testifying during the hearing to suppress evidence obtained from the inside of petitioner's safe committed perjury because the government cannot produce the subpoena which was served on the manager of petitioner's apartment building in order to gain assess to the tenant records.[15]  This contention is utterly without merit and will be dismissed without further discussion

---

[15]As part of their investigation, agents sought documents pertaining to petitioner's residence at the Tobacco Row Apartments.  During the course of obtaining a subpoena for the records, the manager of the apartment building informed the agents that petitioner left a 700-pound safe in the building's basement.  He also informed the agent that it was the apartment's policy to take possession of unclaimed property within 30 days.  At the suppression hearing, the Court heard evidence that petitioner arranged to store the safe in the basement before he left the country. Petitioner made the arrangement with Mr. Clayton whose wife managed the apartments.  At the agent's direction, Mr. Clayton opened the safe and technicians used a vacuum to take samples from the interior and exterior of the safe.  The samples subsequently tested positive for the presence of cocaine and marijuana.

Petitioner claimed a reasonable expectation of privacy in the safe and that exigent circumstances did not justify the warrantless search of the safe.  This Court determined that petitioner did not abandon the safe and that the apartment managers did not have the authority to consent to a search of the safe.  However, the Court concluded that Mr. Clayton could consent to the search because his common authority over and access to the safe made it reasonable to believe that

because any alleged failure with regard to the subpoena in no way inculpates the truth of the witness' testimony or causes the Court to question the processes afforded petitioner throughout his trial, on direct appeal or now in his habeas corpus proceeding.

Finally, petitioner moves the Court to take judicial notice of Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004); presumably petitioner is challenging the determination of his sentence.  Given the recent decision in United States v. Booker, 543 U.S. __ (2005), the Court will consider the impact of that holding on petitioner's motion.

Any challenge premised on Blakely, and now Booker, fails on its merits because, as with Apprendi and other cases applying its principles, Booker does not apply retroactively to matters pending on collateral review.  Although the Fourth Circuit has not directly addressed the question of whether Booker applies retroactively on collateral review to initial § 2255 petitions, every circuit court that has addressed the question concluded that Booker does not apply retroactively.  See Humphress v. United States, 2005 U.S. App. LEXIS 3274, 2005 FED App. 94P, 2005 WL 433191, at *7 (6th Cir. 2005); Varela v. United States, 2005 U.S. App. LEXIS 2768, 2005 WL 367095, at *3-4 (11th Cir. Feb. 17, 2005); McReynolds v. United States, 397 F.3d 479, 2005 U.S. App. LEXIS 1638, 2005 WL 237642, at *2 (7th Cir. 2005); see also Coleman v. United States, 329 F.3d 77 (2d Cir. 2003) (holding that Apprendi does not apply retroactively).

Moreover, neither Apprendi nor Blakely have been held to apply retroactively to cases pending on collateral review.  See United States v. Sanders, 247 F.3d 139, 146 (4th Cir. 2001) ("[N]either the Supreme Court nor any of our sister circuits have held that Apprendi is retroactively

---

he could consent to the search.  Accordingly, this Court denied the motion to suppress.  Petitioner raised this denial in his direct appeal which the Court of Appeals affirmed.

41

applicable on collateral attack."); United States v. Marshall, 2004 U.S. App. LEXIS 26699 (4th Cir.

2004) (stating that the Supreme Court has not made its ruling in Blakely retroactive to cases on

collateral review); In re Dean, No. 04-13244, 2004 U.S. App. LEXIS 14191, *7 (11th Cir., July 9,

2004) ("[T]he Supreme Court has strongly implied that Blakely is not to be applied retroactively.").

Based on these holdings, it is not unreasonable for this Court to conclude that Booker does not apply

retroactively to cases pending on collateral review and it does not offer petitioner any relief from his

sentence.

## VI. Conclusion

Petitioner received a fair trial with the assistance of capable counsel.  As was discussed

above, the Constitution does not guarantee petitioner a perfect trial but, instead, depends on the

adversary process, made up of skilled individuals, to insure that the Government meets its burden

of proof.  In this case, the evidence overwhelming favored the Government and any deficient

performance, if it occurred at all, cannot be said to have prejudiced petitioner in his defense.

Therefore, petitioner's Motion will be DENIED in its entirety.  Petitioner failed to demonstrate, by

a preponderance of the evidence, that the Court imposed his sentence in violation of the United

States Constitution.

An appropriate Order shall issue.


ENTERED this 10th  day of JUNE, 2005


                                    /s/ James R. Spencer
                                    UNITED STATES DISTRICT JUDGE